Good morning, Your Honors. May it please the Court, I'm Karen Landau, and I represent the appellant Mario Ruiz-Lopez. This case presents a very limited issue, whether the government presented sufficient evidence of alienage. If the Ninth Circuit cases are read in conjunction, particularly the Hernandez case and Ortiz-Lopez, it is apparent that the evidence is insufficient. The only evidence in this case was the defendant's admissions that were made in his deport – in connection with his administrative deportation hearing in 2000, and I believe it's 2000 – the admissions were in 2002. The deportation was in 2003. And the admissions were limited, and there was really no corroboration. And every single Ninth Circuit case that has affirmed against – has affirmed sufficiency challenges, and I don't make a sufficiency challenge lightly, every single case had additional corroborating evidence. Judge McKeown, you looked like you were going to interrupt me and ask me a question. McKeown No, I – even though there was additional corroborating evidence, that doesn't necessarily mean that, viewing in the light most favorable to the government here, that there isn't sufficient alienage information. So I'd be interested in your argument as to why the information in these forms, you know, the 294, the 213, and the others, in Spanish, was not sufficient, given what he stated. Harrington Well, let's start with the forms. First of all, the information in all the forms came from the single interview on which the 213 was based. And the – and the 213 really contains two statements. He says he's a native of Mexico, and he says he came in with a coyote. So we have those statements. And that's – that's all. The – the other forms are – Kagan And he did say his father and mother were – Harrington Legal permanent residents, that's correct. Kagan Legal permanent residents in the United States. Harrington In the United States, that's right. So – which I don't think that statement really adds anything one way or the other. But maybe – in any event, he made these three – so we say there's three statements. They occurred all in one interview. There's really no – there's no affirmative evidence about his English fluency, about the – the appellant's English fluency, that is. And the – of course, the INS officer – I call it INS. I know it's changed names many times, but we'll just say INS. Kagan We know who you mean. Harrington I think you know who I mean. That's right. He – he says, well, I'm not fluent in Spanish. I don't remember, you know. And he really doesn't remember. I mean, you know, and then we can understand why. It's 10 years ago. He interviewed a ton of people in the interim, and he doesn't really remember. So – and then we have the other forms, which really don't add anything, because they – they're waivers. The man is in custody.  And he – he signs off, you know. Kennedy And counsel, if I could ask you a couple of questions, just focusing on the form I-213. Harrington Yes. Kennedy Was that form properly admitted in evidence? In other words, did the district court admit it in evidence? And is there a challenge to its admissibility? Harrington Yes. The form is admitted in evidence, and no – there was a challenge below, but we did not challenge its admissibility. Kennedy Okay. So – so for our purposes, it's in evidence in the case? Harrington Correct. Kennedy Then was the jury properly instructed on the beyond a reasonable doubt standard that it had to find every element, including alienage, beyond a reasonable doubt? Harrington Yes, it was. Kennedy So if those two things are the answers, why doesn't that resolve this case? I don't mean to be overly simplistic. But if the form's in evidence, and the form – he makes comments indicating he's a likely alien, you know, came with a coyote or whatever, and if – if there's no challenge to that admission and that there's no challenge to the jury instruction, then why isn't there sufficient evidence if we give the government every favorable inference, which we have to do on a sufficiency challenge? Harrington There's two answers. The first answer is that, in essence, that form and the admissions in that form are really nothing more than a prior deportation order. And this Court has already held in Ortiz-Lopez that a prior deportation order is not sufficient evidence of alienage to affirm – to convict somebody of illegal reentry. Second – Kennedy But the admission – I'm sorry. I interrupted you. I'm sorry. Harrington When we read that in combination with U.S. v. Hernandez, which says that there has to be corroboration of admissions, that's where this case falls short. So what we have is here, yes, it is, and I think I'm going to answer Judge Quist's question, which is that, yes, this case is – we have, as in contrast to Ortiz-Lopez, the admissions in the form came in. So we have admissions of alienage, but we have no corroboration. We don't have any external corroboration, which I would submit is required by Hernandez. That's the hole that this case falls into. Kennedy But you have two things. You have the admission that he's an alien, together with the deportation order. Why isn't that sufficient to establish alienage? And I'll just cite the case U.S. v. Galindo-Gallegos. I can't pronounce some of this stuff. Harrington Galindo-Gallegos – Kennedy How do you distinguish that case? Harrington Galindo-Gallegos I believe I distinguished it in my – in my reply brief. And importantly, in Galindo-Gallegos, the defendant admitted alienage when he was arrested as well. So there was admission – there were admissions in addition – there were admissions outside of the prior deportation order. In this case, the defendant did not make any admissions. So I think it's clear if you have a case where the defendant – where he – in other words, if the defendant had been encountered as he was in jail, and the defendant was the – and he spoke to the agent, and he said, yeah, I'm an alien, that would be corroboration for the admissions in the prior deportation order. But that is not our case. That is the case in Galindo-Gallegos. Kagan But what here – the things we have is – he says he's a Mexican at some point, okay. But the fact that he came over the border rather than through a checkpoint, but with a coyote, do we just – the jury is supposed to ignore that? Harrington No. But again, all these admissions are made – Kagan Because that's not so much an admission of, I am a Mexican citizen. That is a statement of, how did I arrive here in the United States? Now, I suppose it's possible some of us could have come that way and still be a U.S. citizen, but the jury gets to decide what that means. Harrington That's correct, Your Honor. But in this case, again, I have to turn back to the facts, which is that all these three alleged admissions, in essence, they are like one, because they're all made in the same interview. There is some doubt as to the reliability of these reviews. Kagan Right, but that's a question for the jury to weigh as to the English-Spanish understandability, which they were kind of beyond that now. We have to view them in the favor of the prosecution, just given the standard of review. And we don't have just one statement. We have several pieces of evidence. You might want to merge them into one, but there are separate things that are going on. I'm Mexican. That's one. I came over with a coyote. I paid 800, I don't know, $800. Kennedy Let me just review this. He admitted not being a citizen. He employed the coyote. He paid the coyote. He had no pending applications for legal status, and he had the deportation order. What more do you want? Under Hernandez, we need more because all of these, and in every case, and I surveyed the published and unpublished, every case we have something more. We have more evidence. Kagan And what do you need to do, what's hard evidence for him? Kagan Okay, a Mexican birth certificate, for example. Sworn testimony at a prior deportation hearing, by way of another example. Admissions in multiple prior deportation cases. Multiple admissions on multiple occasions. Admissions at the time of arrest. All of those would be sufficient, but we have none of that here. Kagan All right. Thank you. Kagan I'll save my last minute. Thank you, Your Honor. Susan Gray Good morning. Susan Gray on behalf of the United States. The evidence in this case was more than sufficient to support the jury's verdict with or without corroboration. The government's uncontradicted evidence consisted of three separate and repeated admissions of alienage, the deportation order, the defendant's actual deportation, and his actions in the context of the deportation, all of which were sufficient to enable the jury to conclude that alienage had been established beyond a reasonable doubt. Before I actually get down to looking at the exhibits and the evidence, I want to make sure that the chronology of this case is clear for the Court, and that is that as the defendant admits in his reply brief, we're not dealing with admissions made at the time of the crime. There's no confession, no post-defense admission, as in Hernandez, which triggers the need in terms of a confession for independent corroboration. But even if that was the case, we do have independent corroboration here. These admissions took place in 2002, nine years before the crime of which the defendant stands convicted. And, in fact, he wasn't deported for nine years later. So it's not a confession. There's no need for independent corroboration. But secondly, I want to make sure that to address Judge McEwen's comment about the fact that we have separate admissions here, that the defendant has attempted to conflate the initial admission that he made to the INS officer with the subsequent admissions made in those documents. And this Court has never treated them, the documents in the deportation hearing and admissions and deportation itself, as one single event. That's particularly made true in the Sotelo case at 109, Fed 3rd, 1449. There, the Court, if it looked at the types of documents we have here, which is the order to show cause, or in this case, because it was an expedited administrative removal and not a deportation hearing because of the aggravated felony, the Court looked at the advisement of rights, where he was informed of the particular allegations, the fact that he admitted them. Then the Court looked separately at the order of deportation and the warrant. So in this particular case, we had the attempt to conflate all of those documents into one single admission is inappropriate and certainly not supported by the case law of Ramirez-Cortez or any of those that were discussed in our briefs. In this particular case, we have, as Your Honor pointed out, a very specific admission, that I came across the border, I paid a coyote, which a United States citizen would not have needed to do, and that his parents had no status. As Judge McKeown pointed out, the jury was able to weigh that evidence, particularly in light of the extensive cross-examination of the agent's pattern and practice, whether or not he would have terminated the interview if the defendant couldn't understand him, and there was no indication of that. And then on top of that, we have the second admission, which is the I-835, where he's informed of the allegations. He confirms them and then specifically admits those allegations. And this is very similar to the situation in Ramirez-Cortez and Contreras, where the Court looked at a prior deportation. We have the, I admit the allegations, I admit I'm deportable, and he confirms that. The defendant's attempt to rely on Hernandez, that one admission, a subsequent admission in a very formal context after he had six months to think about it, can't be used to corroborate the first one that he made to the INS agent, is an opposite, because we're not dealing with a confession here. There is no need for an independent corroboration. But I would submit that, indeed, this is a very separate one, because it was in a formal context, it was made after he had time to think about it. Third, you have the, as the district court felt, you have the third admission, which is the removal order, again, in which he makes that admission. Then there are two other documents, the Exhibits 4 and 5 in this case, in which he's advised you're going to be deported. He does nothing. He then is, in fact, deported, as is shown by the government's evidence, Exhibit 6. And in Sandoval v. Gonzalez, this Court found that was extremely probative of alienage, because it said, while not conclusive, the fact that Sandoval had been deported before and that he'd allowed himself to be deported twice without asserting American citizenship is certainly probative of alienage. So in this case, we have repeated but separate admissions made long prior to the crime charged and corroborated as his actions. This is not Lopez. This is not Hernandez, because we're not really dealing with post-offense admissions or confessions. So we would urge the Court to affirm the jury's verdict. If I have no further questions? I think not. Thank you. Thank you. Just one point. The government has suggested that there's less need for independent corroboration because the admissions were 10 years old. I would submit that there's more need for independent corroboration. The point is, is that an admission requires you can't find sufficient evidence of alienage if it's based on an admission. And here we have this we have this hearing. We have no fingerprint mark on the on the I-213, and we have we have no, we have, you know, we have no current corroboration. And the age of it, if anything, makes it makes corroboration more necessary. You know, the idea that he had time to think about it and then allowed, you know, signed off on the 851 and the other forms is equally nonpersuasive. The defendant is sitting in jail. A lot of people would just say, I'm going to be deported. I'm going to, you know, I'm going to just sign where they tell me. Anyway, in this case, I would submit that the facts are sufficiently distinguishable from controlling authority that reversal is required. Thank you. Thank you. The case just argued of the United States v. Ruiz-Lopez is now submitted.
judges: Quist, McKeown, Gould